E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
DAVID H. CHAO (Cal. Bar No. 273953)
Major Frauds Section
Assistant United States Attorneys
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0526/4586
    Facsimile:   (213) 894-6269
    E-mail:      kristen.williams@usdoj.gov
                   david.chao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>TAMARA YVONNE MOTLEY,<br>  aka "Tamara Ogembe,"<br>  aka "Tamara Motley-Ogembe,"<br><br>          Defendant. | No. CR 17-774-SB-1<br><br><u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPLICATION FOR REVIEW/RECONSIDERATION OF DETENTION ORDER; DECLARATION OF KRISTEN A. WILLIAMS AND EXHIBIT A THERETO</u><br><br>Indictment: 12/14/2017<br>Trial: 6/20/2023<br>Sentencing: 11/7/2023 at 8:00AM |

      Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristen A. Williams and David H. Chao, hereby files its opposition to defendant TAMARA YVONNE MOTLEY's Application for Review/Reconsideration of Order of Detention (Dkt. 493).

//

//

1    This Opposition is based upon the attached memorandum of points and
2    authorities, the attached declaration of Assistant United States Attorney Kristen A.
3    Williams and Exhibit A thereto, the files and records in this case, and such further
4    evidence and argument as the Court may permit.

5    Dated: August 31, 2023             Respectfully submitted,

6                                       E. MARTIN ESTRADA
                                        United States Attorney

7
                                        MACK E. JENKINS
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9
10                                      */s/*
                                        KRISTEN A. WILLIAMS
11                                      DAVID H. CHAO
                                        Assistant United States Attorney
12
                                        Attorneys for Plaintiff
13                                      UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 27, 2023, a jury found defendant TAMARA YVONNE MOTLEY ("defendant") guilty of health care fraud, aggravated identity theft, and money laundering conspiracy. (Dkt. 478.) Following argument from the parties, the Court found that defendant had failed to establish by clear and convincing evidence that she would not flee or pose a danger to the community, and so remanded her into custody. (Dkt. 478.) See 18 U.S.C. § 3143(a)(1); Fed. R. Crim. P. 46(c) (conditioning post-conviction eligibility for release pending sentencing on satisfaction of provisions in 18 U.S.C. § 3143).

Defendant now applies for reconsideration of the Court's detention order based on a vague and conclusory proffer of information that has no bearing on flight risk and the danger she poses to the community. (See Dkt. 493 ("Application" or "App.").) The Application is procedurally flawed and lacks merit, and should be denied.

## II. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. Defendant's Release on Bond

Following her arrest in late 2017, defendant was released on $275,000 bond, including $125,000 supported by two properties (one owned by defendant's mother (and identity-theft victim) and her stepfather, and another property in a third-party's name that served as defendant's residence) and $150,000 supported by three affidavits of surety without justification from defendant's mother, stepfather, and uncle, Ausie Motley ("A. Motley"). (Dkt. 65.) Following notice that defendant's residence was subject to a trustee's sale, defendant eventually replaced that property with one owned by A. Motley. (Dkt. 268, 316, 443.)

Defendant has not consistently complied with the terms of her bond pre-trial. Defendant violated the term prohibiting her from contacting witnesses through her unsolicited contact with her former nanny and government trial witness Angelica Aguilar

1  in August and November 2019, shortly before defendant was initially due to start trial in
2  December 2019.  (See Dkt. 173 (Notice of Violation of Bond Condition).)

### B.   Evidence as to Flight Risk and Danger to the Community

The pre-trial and trial record shows defendant's extensive international travel and personal ties to Nigeria and her husband's political career there, as well as unaccounted-for fraud proceeds, a large portion of which was turned into untraceable cash.  (See, e.g., Tr. Ex. 607 (parties' stipulation regarding defendant's international travel); Dkt. 455 (Joint Motion in Limine Regarding Evidence of Defendant's Ties to Nigeria and Husband's Political Career); Tr. Ex. 507 (summary chart of disbursements made by defendant from Action and Kaja bank accounts).)  The evidence also revealed not only the duration and scope of defendant's scheme and her efforts to conceal her involvement in it, but also defendant's willingness to continue with her criminal conduct through another company (Kaja) even after the main company (Action) was searched by multiple federal criminal law enforcement agencies and effectively shut down.

Additionally, although not introduced at trial, the investigation revealed that defendant controlled other durable medical equipment ("DME") companies, which, like Action and Kaja, were also placed in the names of defendant's relatives and associates even though it was really defendant who controlled them.  One of those, AM Medical Distributors ("AM Medical"), was in the name of defendant's uncle (and bond surety), A. Motley, but run by defendant.  When interviewed, A. Motley said that he was listed as the owner at defendant's request, but was not familiar with its operations, which were handled by defendant; he failed to recognize the signature that was purportedly his on Medicare documents for AM Medical, but stated that he signed a power of attorney giving defendant authorization to act on his behalf.  (See Ex. A to the Declaration of Kristen A. Williams ("Williams Decl.").)  AM Medical Distributors billed Medicare for more than $960,000 in DME claims in 2009 (during the charged Action/Kaja scheme), and received more than $404,000 in payments on those claims, with many of those claims, as with Action, based on referrals from Dr. Eugene Hubbard and for power

wheelchairs and back and knee orthotics.  (See Williams Decl. ¶ 3; Tr. Ex. 510 (summary chart regarding Action referring physicians); Tr. Ex. 509 (summary chart of Action procedure codes billed).)

## III. ARGUMENT

### A. Defendant Fails to Show a Valid Ground for Reconsideration of the Court's Remand Order

As a threshold matter, defendant's Application should be denied because it fails to offer a valid ground for reconsideration of the Court's prior remand order.  A motion for reconsideration may only be made where there is

> (a) a material difference in fact or law from that presented to the Court that, in exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was ordered.

C.D. Cal. L. Civ. R. 7-18; see C.D. Cal. L. Crim. R. 57-1 (when applicable directly or by analogy, local civil rules govern conduct in criminal proceedings unless otherwise specified).  "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."  Id.; see Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (motion for reconsideration not vehicle to reargue the motion, present arguments that could reasonably have been raised earlier, or present evidence that should have been raised before).

Defendant's Application for reconsideration offers no new facts or law to meet her burden to show by clear and convincing evidence that she does not pose a flight risk or danger to the community.  First, defendant's Application does not make clear when the facts supporting the request arose, which raises the possibility that these facts could have been presented to the Court when the matter was initially heard.  Second, even accepting these facts as "new," they only purport to justify why defendant should be the one in her family to determine eligibility for financial assistance for her mother and uncle and get them admitted to an assisted living facility.  Although defendant claims that these

3

circumstances reduce the likelihood of her flight and harming the public (App. at 3), there is no explanation of why these facts -- which do nothing to alleviate the concerns stemming from her international ties, potential resources for flight, and willingness to violate the law and the Court's orders -- are material to those issues.  Finally, defendant's claim that her uncle remains willing to serve as a surety merely repeats defendant's earlier claims that her secured bond sufficiently ensured her appearance and protected the public.[1]  The Court has already rejected that claim.  Accordingly, defendant's Application should be denied on its face.

### B. Defendant Fails to Show by Clear and Convincing Evidence that She Is Not a Flight Risk or Danger

Defendant's Application also fails on its merits.  The Bail Reform Act provides that the Court

> shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community

if released. 18 U.S.C. § 3143(a)(1) (emphasis added).  "[Section] 3143(a) creates a presumption in favor of detention pending sentencing." United States v. Marks, 947 F. Supp. 858, 863 (E.D. Pa. 1996).  Defendant bears the burden of establishing that she is not a danger to the community or a flight risk.  Fed. R. Crim. Proc. 46(c).  Because defendant again fails to carry her burden, the Application should be denied.

Defendant's Application proffers information relating to the health of her mother, uncle, and siblings, claiming that those facts establish that defendant's physical presence is needed in Virginia to determine her mother and uncle's eligibility for financial assistance and arrange for them to move into assisted living.  The information proffered does not even establish that; it fails to show, for example, why defendant's physical presence is required for those tasks or why the health conditions of her siblings

---

[1] The government relies upon its best recollection of the arguments surrounding defendant's remand, since no transcript is yet available.

4

disqualify them, and ignores the potential for other relatives (such as A. Motley or her nephews, including Bryant Brown[2]), individuals, or governmental or non-profit organizations to assist. But even if the Application did show that defendant was the only one who could assist her relatives and needed to do so now and in person, the Application does not address the concerns regarding her flight and danger that supported her remand, much less show by clear-and-convincing evidence that she poses no risk of flight or danger, as Section 3142 requires.

Moreover, defendant's citation to A. Motley's willingness to serve as a surety to secure her continued appearance not only repeats an already rejected argument, but also raises additional concerns in light of defendant's operation of another DME company under similar circumstances during her fraud scheme. Either defendant pulled the wool over A. Motley's eyes as to what she was doing in his name or he was complicit in defendant's conduct through that company. Neither scenario mitigates the flight risk or danger to the community that she poses.

Thus, even on the merits, defendant's Application still fails to carry her burden.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Application for reconsideration of the Court's detention order.

---

[2] Familiar to the Court as the nominee owner of Kaja and one of defendant's identity theft victims.

## DECLARATION OF KRISTEN A. WILLIAMS

I, Kristen A. Williams, state and declare as follows:

1. I am an Assistant United States Attorney ("AUSA") for the Central District of California and am one of the attorneys assigned to the prosecution of <u>United States v. Tamara Yvonne Motley, et al.</u>, CR No. 17-00774-FMO. I make this declaration in support of the Government's Opposition to Defendant Motley's Application for Reconsideration/Review of Detention Order.

2. Attached hereto as Exhibit A is a true and correct redacted copy of a report of an August 11, 2014 interview of Ausie Motley regarding AM Medical Distributors, Inc.

3. Based on my review of Medicare claims information obtained from Medicare records during the course of the investigation and produced in discovery at Bates No. USAO_00188029, I am informed and believe that AM Medical Distributors billed Medicare for more than $960,000 in DME claims in 2009, and received more than $404,000 in payments on those claims, with more than 31% of those claims based on referrals from Dr. Eugene Hubbard and more than 82% of the claims for power wheelchairs and back and knee orthotics.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on August 31, 2023, in Los Angeles, California.

_____
KRISTEN A. WILLIAMS